**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| EDDIE JACKSON | CIVIL ACTION |
| VERSUS | NO. 11-0223 |
| STATE OF LOUISIANA | SECTION "R" (6) |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

**I. PROCEDURAL HISTORY[1]**

On May 17, 2005, the State charged petitioner, Eddie Jackson, with one count of

---

[1] A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's opinion, *State v. Jackson*, 11 So.3d 524, No. 2008-KA-0286 (La. App. 4 Cir. April 29, 2009).

possession with intent to distribute marijuana (count one) and one count of possession with intent to distribute heroin (count two) in violation of La. R.S. 40:966. Petitioner entered a not guilty plea on May 31, 2005. On June 24, 2005, the trial court found probable cause and denied the Motion to Suppress the Evidence. On August 25, 2006, a twelve member jury found petitioner guilty as charged on both counts.

On November 16, 2006, petitioner filed a Motion for Post Judgment Verdict of Acquittal and Motion for New Trial. The trial court denied the Motion for New Trial on April 26, 2007. On April 27, 2006, the trial court sentenced petitioner to ten years on count one and seven years on count two at hard labor without the benefit of probation, parole or suspension of sentence. That same day, the State filed a multiple bill charging petitioner as a fourth felony offender. A hearing on the multiple bill, however, was not held. On November 16, 2007, petitioner filed an untimely Motion for Appeal, which the trial court granted.

Pursuant to petitioner's appeal, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction. The court, however, vacated petitioner's sentence and remanded the matter for a "ruling on the Motion for Post Verdict Judgment of Acquittal, imposition of a fine as to the marijuana conviction, removal of the prohibition of parole on the heroin sentence, and correction of the minute entry and commitment form." *Jackson*, 11 So.3d at 534.

Pursuant to the state appellate court's remand, the district court, on May 4, 2009, amended petitioner's sentence, providing that his sentence as to count 1 was to be served without benefit of probation or suspension of sentence. With regard to count 2, the court specified that petitioner's sentence was to be served with benefit of probation or suspension of sentence and with a fine of $500.00.[2] On May 15, 2009, the district court denied petitioner's motion for post-verdict judgment of acquittal.[3]

Less than a year later, on January 29, 2010, the Louisiana Supreme Court denied petitioner's writ application, *State v. Jackson*, 25 So.3d 830 (La. 2010), thereby rendering petitioner's convictions and sentences final.[4] Petitioner's time for seeking review expired 90 days later, on April 29, 2010, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. *See* Sup.Ct.R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1209 (10th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000).

Petitioner filed the instant action on or about January 28, 2011. Though difficult to

---

[2] *See* State rec., vol. 1, docket master, p. 6.

[3] *Id.*

[4] While his appeal was pending, petitioner filed writ applications within the state court system. (*See* St. rec., vol. 4 of 4). Petitioner's effort in this regard culminated on June 22, 2009, when the Louisiana Fourth Circuit denied relief. *See State v. Jackson*, No. 2009-K-0675 (La. App. 4 Cir. 2009) (unpublished opinion).

understand, petitioner's claim for relief appears to be that his constitutional rights were violated by virtue of the fact that he was not provided with a copy of his preliminary hearing transcript when he proceeded to trial, thereby impeding his ability to impeach a trial witness.

Given the fact that petitioner filed this matter approximately three months before his one-year limitation period expired on April 29, 2011, petitioner's habeas application is timely.[5] As for exhaustion, there is no suggestion that petitioner failed to exhaust his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Accordingly, this court will proceed to address the merits of petitioner's claim following its review of the applicable facts and standard of review.

## II. **FACTS**[6]

New Orleans Police Officer Lt. Joseph Williams testified that on March 30, 2005, Detective Dennis Bush received information from a reliable confidential informant that an individual named "Eddie" was involved in narcotics activity at the intersection of Desire and Law Streets. Detectives Dennis Bush, Mike Dalferes, Corey Robinson and Yussef

---

[5] Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. § 2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review. *See* 28 U.S.C. § 2244(d)(1)(A) (West 2011), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.

[6] The facts are taken from the Louisiana Fourth Circuit's opinion, *Jackson*, 11 So.3d at 527-528.

Willoughby, in plain clothes and unmarked police units, conducted surveillance at that location. Lt. Williams and Detective Jody Laroche, also in plain clothes and manning an unmarked unit, served as enforcement officers to affect an arrest, and they positioned themselves just outside the surveillance area. Following surveillance, Detectives Dalferes and Bush got into Williams' car and followed petitioner to 2518 Louisa Street. Detectives Dalferes and Bush went to the back of the house while Lt. Williams and Detective Laroche covered the front door of the house. Shortly thereafter, Detective Bush arrested petitioner.[7]

Similarly, Detective Corey Robinson testified that he was assisting the surveillance of petitioner at Desire and Law Streets. Detective Robinson first observed petitioner about five to eight feet from the intersection talking with a person standing on the sidewalk. Detective Robinson witnessed the person hand petitioner what he believed to be currency. Petitioner placed the currency in his pocket and then walked a short distance into a vacant lot where he picked up a brown paper bag. Petitioner reached into the bag and retrieved an item, which he gave to the person, who then walked away. A few minutes later, Detective Robinson observed two other occasions during which people approached petitioner, and he repeated his previous behavior of receiving what Robinson believed to be currency, walking to the brown paper bag, removing something from it, and handing it to the person. Upon completion of the third transaction, it began to rain. Petitioner gathered the brown paper bag

---

[7]Lt. Williams informed the court that Detectives Bush, Laroche and Willoughby are no longer with the New Orleans Police Department.

and rode on a bicycle to a house in the 2500 block of Louisa Street. Detective Robinson followed petitioner and directed the takedown units to the location. When petitioner walked down the alley to the back of the house, Detective Robinson lost sight of him. The takedown units arrested petitioner shortly thereafter.[8]

Detectives Bush, Dalferes, Willoughby and Robinson made in-court identifications of petitioner as the person they arrested on March 30, 2005.

Joseph Roy Allen, a property clerk with the Orleans Parish Criminal District Court, testified that the evidence room of Criminal District Court was flooded by five feet of water from Hurricane Katrina. Corey Hall, a New Orleans Police Department crime lab technician and an expert in the analysis and identification of narcotics, testified that he tested the packets of substances retrieved from petitioner. The substances tested positive for marijuana and heroin.

## III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[8] Detective Michael Dalferes took the stand and informed the court that he had also participated in petitioner's arrest in an undercover police unit on March 30, 2005, conducting surveillance of petitioner in the area of Law and Desire Streets. Detective Dalferes rode along with Detective Bush to Louisa Street as directed by Det. Corey Robinson. Detectives Dalferes and Bush went to the back of the house and knocked on the door. Petitioner opened the door, panicked and dropped the brown paper bag to his feet. Detective Dalferes inspected the contents of the bag, which he recognized as packets of heroin and marijuana, arrested petitioner, searched him and retrieved $40.00. The evidence was tagged and transported to central lockup.

comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner asserts that the State, in violation of his constitutional rights as enunciated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), did not provide him with a copy of his preliminary hearing transcript, thereby impeding his impeachment efforts at trial. Specifically, petitioner asserts that he could have used the preliminary examination testimony of Detective Dennis Bush to impeach the trial testimony of Detective Mike Dalferes. The basis of petitioner's impeachment claim is that Detectives Bush and Dalferes, in connection with their surveillance of petitioner, were in the same vehicle. As such, there testimony should have been comparable. Petitioner, however, was not able to utilize Bush's preliminary examination testimony for the purpose of impeaching Dalferes's trial testimony because the State did not provide him with a copy of the preliminary examination transcript despite his repeated requests for same.

"The prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is material either to guilt or to punishment." *Kopycinski v. Scott*, 64 F.3d 223, 225 (5th Cir. 1995), *citing Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1197. Under *Brady* and its progeny, the prosecution is required to disclose to the defense

8

both exculpatory evidence and evidence that would be useful for impeachment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196; *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Bagley*, 473 U.S. 667, 675-76, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Thus, to prove a constitutional violation as contemplated under *Brady*, there must be a suppression of evidence which is both favorable to the accused, in terms of being exculpatory and/or useful for impeachment purposes, and material to his or her guilt or punishment. Materiality is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quotation and citation omitted).

For the following reasons, the court finds that petitioner has failed to show that he suffered a *Brady* violation. First, there is no evidence to suggest that the State suppressed the preliminary hearing transcript. Instead, a review of the State record reflects that petitioner did not receive a copy of the preliminary hearing transcript prior to trial not as a result of any suppression on the part of the State, but rather, because the preliminary hearing tapes had not yet been transcribed. The pertinent tapes were in the court reporter's home which flooded during Hurricane Katrina, thereby significantly delaying the transcription time.

Second, a review of the preliminary hearing transcript, a copy of which is attached to

petitioner's habeas application, reflects only one relatively insignificant discrepancy between the two officers' testimony. Bush stated that their surveillance commenced at 3:30 p.m. and he observed petitioner approximately ten minutes later. (Preliminary hearing transcript, p. 4). Dalferes, who was in the same vehicle as Bush, stated that he first saw petitioner at 4:35 p.m. (St. rec., supplemental vol. 2, trial transcript, p. 39).

As noted above, in order to constitute *Brady* material, the evidence must be material. To establish materiality, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, *supra*.

The court finds that it is not reasonably probable that petitioner's proceeding would have been different had the jury been aware that despite the fact that they were in the same vehicle performing the same surveillance, there was a one hour difference between when Detective Bush claimed to have seen petitioner and when Detective Dalferes professed to having seen petitioner. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Eddie Jackson, be **DENIED WITH PREJUDICE**.[9]

---

[9] In light of this court's recommendation, petitioner's motion for clarification (rec. doc. 12), is **hereby denied**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[10]

New Orleans, Louisiana, this __28th__ day of ____October____, 2011.

[signature]

LOUIS MOORE, JR.
United States Magistrate Judge

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.